ANDREW RE GILKERSON

*v.*

THE HONORABLE C. BERKLEY LILLY

CHIEF JUDGE, *etc., et al.*

(No. 15374)

Decided March 5, 1982.

*Lee H. Adler* for petitioner.

*Chauncey H. Browning,* Attorney General, *Laurie J. Garrigan* and *Silas B. Taylor,* Assistant Attorneys General, for respondents.

NEELY, JUSTICE:

This is an original prohibition proceeding that invites further illumination of our law on double jeopardy. On 11 August 1979 petitioner, then nineteen years old, accompanied a juvenile to the local skating rink in Raleigh County. On the way home, they walked along West Virginia Route #16 and either one or both decided to break into the Dairy Delight dairy stand. Apparently pursuant to a preconceived plan, the petitioner assisted the smaller and thinner juvenile through a window and the juvenile handed out cigarettes and confectionery items to petitioner. Within minutes the police arrived and arrested the juvenile. Petitioner was not apprehended until 16 August 1979, at which time he waived his right to a preliminary hearing on the nighttime breaking and entering charge.

Petitioner posted bond on the nighttime breaking and entering charge and also posted bond on a companion case, charging him by warrant in magistrate court with the misdemeanor, contributing to the delinquency of a minor by:

> enticing, encouraging, inviting, and soliciting the said Howard Franklin Scott to break and enter,
> . . .

Petitioner was tried on the misdemeanor, contributing to delinquency charge in magistrate court on 20 September 1979, found guilty, fined $80 and costs, and sentenced to five days in jail. In January 1980, petitioner was indicted for the nighttime breaking and entering. He now challenges the indictment on the grounds of double jeopardy.

## I

The thrust of petitioner's argument is that in *State ex rel. Dowdy v. Robinson*, 163 W.Va. 154, 257 S.E.2d 167 (1979) this Court adopted the "same transaction test" for determining whether the trial of a defendant for one offense bars his trial for another offense arising from the same criminal transaction. Petitioner argues that since his breaking and entering arose from the exact same transaction as his contributing to the delinquency of a minor, trial on the breaking and entering is now barred because he has already been convicted of an offense arising out of the same transaction, namely contributing to delinquency. Citing *Dowdy, supra* as his authority, petitioner admits that the State could have tried him on both charges at the same time, but asserts that having failed to join the offenses for trial at the same time the State is now precluded from putting him to the expense and strain of a second trial.

The question before us, therefore, is whether we shall apply the same transaction test as enunciated in *Dowdy, supra* and reaffirmed in *State ex rel. Johnson v. Hamilton*, ____ W.Va. ____, 266 S.E.2d 125 (1980) to cases where one offense is a misdemeanor which must be prosecuted of right in the magistrate court and the other is a felony pending in the circuit court. We hold that the same transaction test alone does not make a conviction or acquittal in magistrate court on a misdemeanor an automatic bar to the prosecution of a felony charge arising out of the same transaction in the circuit court.

## II

The trial judge below made a prescient observation in his letter opinion in this case when he said:

> 3. It would appear from a triology of West Virginia cases: (1) State ex rel Dowdy Vs. Johnson 257 S.E.2d 167; (2) State ex rel Johnson Vs. Hamilton 266 S.E.2d 123; (3) State ex rel Watson Vs. Ferguson 274 S.E.2d 440 hold that double jeopardy must be viewed from two tests, known as the "same evidence" and the "same transaction" tests. These cases are about as clear as mud.

If the holdings of this Court on the subject of double jeopardy tend to be confusing, our sense of inadequacy is at least solaced by the total lack of illumination on the subject emanating from the United States Supreme Court.[1] The lack of consistent holdings is undoubtedly a fair reflection of the complexity of the problem and the number of permutations of real world factual situations requiring application of double jeopardy principles. There is, however, a consistent thread that, at least implicitly, runs through our cases and that is one of policy. As this Court said in *Dowdy, supra*:

> The policy behind the prohibition against double jeopardy is probably best stated in Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957):
>
>> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. 355 U.S. at 187, 78 S.Ct. at 223. 257 S.E.2d at 170.

The object of our "same transaction test" is to discourage certain abuses that all of us have observed from time to time in criminal prosecutions. It is not uncommon for three or four separate felonies to arise from a single transaction and for the prosecution to obtain separate indictments and schedule separate trials on each offense.

---

[1] Justice Blackmun, with self-deprecating insight, referred to "the Court's continuing struggle to create order and understanding out of the confusion of the lengthening list of its decisions on the Double Jeopardy Clause" in his dissenting opinion in *Sanabria v. United States*, 437 U.S. 54, 80, 98 S.Ct. 2170, 2187, 57 L.Ed.2d 43 (1978). *See also* Weston, "The Three Faces of Double Jeopardy: Reflections on Government Appeals of Criminal Sentences," 78 *Mich. L. Rev.* 1001 (1980).

Where these crimes are neither one offense with lesser included offenses nor provable by the same evidence, separate trials are permissible under the United States Supreme Court's "same evidence test." In *Johnson v. Hamilton, supra* we indicated that our decision in *Dowdy, supra* adopting the "same transaction test" was not predicated upon an *absolute* state constitutional standard, but was rather a court-fashioned rule of procedural law designed to secure a fundamental state constitutional right. In *Johnson v. Hamilton* we said:

> Our discussion in the *Dowdy* case concerning the rules for implementing the West Virginia Constitution's prohibition against double jeopardy indicates that our selection of the 'same transaction' test and the 'same evidence' test, depending upon which is more favorable to the defendant, is a matter of policy which goes to the appropriate procedure for securing a fundamental right.

The preeminent position of policy, as opposed to absolute constitutional mandate, was finally made clear in the case of *State ex rel. Watson v. Ferguson,* ___ W.Va. ___, 274 S.E.2d 440, 444 where the Court said:

> In light of the foregoing salutary goals and under our inherent rule-making power, we conclude that a defendant shall be charged in the same indictment, in a separate count for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transactions, or are two or more acts or transactions connected together or constituting parts of a common scheme or plan. To the extent that *State ex rel. Johnson v. Hamilton,* W.Va., 266 S.E.2d 125 (1980), set the rule as a constitutional holding, it is disapproved.

It is now possible to say that the policy principles behind the double jeopardy clause are effected in this jurisdiction by a procedural rule that requires the defendant to be tried at the same time for all offenses arising out of the same transaction. Nonetheless, as in *Watson v.*

*Ferguson, supra,* where the Court permitted multiple trials under circumstances where four people had been murdered by the defendant using a tire tool in the course of one unlawful entry into a single house, a court may for good cause choose not to apply the procedural rule. In *Watson* this Court concluded that the murders were sufficiently distinct and that there was good cause for trying each one separately. The Court said:

> Here there is no contention that the multiple homicides occurred as a result of a single volitive act on the part of the defendant, but rather each was killed by sequential acts of the defendant moving from one victim to another, striking them with the tire lug wrench. Thus, where multiple homicides occur even though they are in close proximity in time, if they are not the result of a single volitive act of the defendant, they may be tried and punished separately under the double jeopardy clause of Article III, Section 5 of the West Virginia Constitution. 274 S.E.2d 440, 448.

Furthermore, the Court in *Watson* pointed out that while there are legitimate policy reasons for requiring the defendant to be prosecuted for all offenses arising out of the same transaction at the same time, there are, nonetheless, countervailing policies that frequently militate in favor of separate trials. In this regard the Court said:

> In any analysis of the policies underlying double jeopardy in the area of offenses against multiple victims, it must be recognized that the extent [of] criminal culpability cannot be answered merely by looking at the shortness of the time frame. Some consideration must be given to the defendant's criminal acts and intent. We do not conceive that in fashioning a double jeopardy policy in regard to what is the "same offense" that we can ignore the fact that multiple victims have been the subject of the defendant's acts. There can be little doubt that one function of a criminal justice system is to enable those individuals who have been victimized by the criminal acts of

another to find some individual vindication of the harm done to each. Certainly, the degree of culpability, and as a consequence the degree of punishment, must bear some proportion not only to the magnitude of the crime but also to the number of victims involved. There are fundamental considerations that society expects from a criminal justice system. 274 S.E.2d at 446.

Reading synoptically the trilogy of cases just discussed it may be possible to draw certain conclusions about the continued viability of the same transaction test. First, the same transaction test is a procedural rule that is not mandated by either the State or federal constitutions but is in furtherance of the general policy enunicated in the double jeopardy clauses. Second, a person has a right to be tried at the same time for all felonies and misdemeanors arising out of the same transaction. Third, where there are multiple victims of a series of outrageous criminal acts arising out of the same transaction, as for example multiple murders or multiple rapes, the policy goal of vindicating the outrage of each individual victim is sufficiently urgent to warrant a court permitting separate trials to focus on the harm done to each separate victim. However, absent strong and urgent countervailing policy reasons for not requiring a joint trial going to the need to vindicate individual victims, a person cannot be tried at a second trial for an offense of which the prosecution was aware at the time of the first trial if the second offense arose out of the same transaction as the first offense.

### III

*Watson v. Ferguson, supra,* indicates that the procedural rule that expects all offenses arising out of the same transaction, whether they be felonies or misdemeanors, to be tried together applies to a situation where one offense is a felony and the other a misdemeanor. Our language in *Watson* on this subject was comparatively broad, but that was before we had an actual case with all of its real life ramifications before us.

In real life it must be recognized that many so-called "judicial" proceedings in magistrate court are essentially administrative in nature. Notwithstanding our constant urging that prosecuting attorneys appear in magistrate courts, *e.g., State ex rel. Skinner v. Dostert,* ___ W.Va. ___, 278 S.E.2d 624, 630 (1981), and that those courts take on the dignity that has previously been reserved for circuit courts, we are not unaware that in the work-aday world many of our high expectations are confounded in practice.

Furthermore, we have held that where the prosecution for a misdemeanor is initiated by warrant in magistrate court the offense is triable as of right in magistrate court and only defendant's knowing and voluntary waiver of that right to be tried in magistrate court permits a prosecutor to proceed by indictment in the circuit court. *State ex rel. Burdette v. Scott,* 163 W.Va. 705, 259 S.E.2d 626 (1979). Finally, we perceive that the mechanical application of the same transaction test to combinations of felonies and misdemeanors may lead to utterly outrageous miscarriages of justice.

While every effort is made to establish high standards of competence in magistrate courts, nonetheless, magistrates are not lawyers. Admittedly, over the course of several years in office many magistrates master law to a high degree of professional competence; however, every four years at least twenty-five percent of our magistrates are entirely new to the job. Thus we can envisage a negligent homicide arising from a motor vehicle accident where the police officer secures a warrant for drunk driving in magistrate court while the prosecutor successfully seeks an indictment for vehicular homicide in the circuit court. Any competent defense lawyer would advise the defendant to proceed immediately to magistrate court and offer a plea of guilty to the drunk driving charge in the perfectly correct expectation that the plea to that charge, arising as it did out of the same transaction as the vehicular homicide, would be a bar to subsequent prosecution for the more serious vehicular homicide.

Unless the magistrate were highly experienced and the lines of communication between the magistrate court and the overworked prosecutor's office comparatively efficient, it is not unlikely that the magistrate would accept the plea, set a penalty, and entirely dispose of the case without the prosecutor's prior knowledge. As we pointed out in *Dowdy*, the entry of a final judgment order in a criminal case has a certain artificial magic about it whenever we are talking about double jeopardy questions.

Even in the absence of purposeful legal tactics designed to use the same transaction test to confound justice, there are other mechanical obstacles to the automatic application of the test to a combination of felonies and misdemeanors. Warrants can be issued at any hour of the day or night in a comparatively informal setting. Grand jury indictments, on the other hand, can be returned only when the grand jury is sitting, i.e., a few days or weeks of each term of court. Consequently, it is highly likely that misdemeanor warrants would be procured immediately against a defendant while an indictment for a felony of which the prosecutor has knowledge at the time a misdemeanor warrant is issued will not be returned for several weeks or even months.

We conclude, therefore, that the same transaction test cannot be used to bar a subsequent felony prosecution on the grounds that a misdemeanor conviction has been obtained in magistrate court for a misdemeanor arising out of the same transaction unless the defendant moves in the magistrate court that the prosecutor proceed on the misdemeanor by indictment and try the defendant on the misdemeanor charge jointly with the felony in the circuit court.[2] Once that occurs, the problem of related prosecutions will become obvious to the prosecutor and the mechanical problems discussed above will cease to be

---

[2] We note that such a motion by the defendant for joinder of all charges from both magistrate court and circuit court in one trial before the circuit court constitutes a waiver of right to trial in magistrate court. Hence, this holding is consistent with *State ex rel. Burdette v. Scott*, 163 W.Va. 705, 259 S.E.2d 626 (1979).

relevant. Once the opportunity for confounding the criminal justice system through poor communication and inattention in the magistrate court has been eliminated, the defendant may then rightfully expect that all offenses arising out of the same transaction be tried together in the circuit court.

## IV

In the case before us the only test that could conceivably bring the two offenses within the purview of the double jeopardy clause is the "same transaction test." Contributing to the delinquency of a minor is certainly not a lesser included offense of nighttime breaking and entering nor is the evidence necessary to prove contributing to delinquency coextensive with the evidence necessary to prove breaking and entering. Consequently, there are no other grounds that would permit the petitioner successfully to defend against the felony prosecution on double jeopardy principles.

For the reasons set forth above the writ of prohibition prayed for is denied.

*Writ denied.*