# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Raymond Allen,**
**Petitioner Below, Petitioner**

vs)   **No. 17-0434** (Fayette County 16-C-277-H)

**John T. Murphy, Warden,**
**Huttonsville Correctional Center,**
**Respondent Below, Respondent**

**FILED**

**March 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Raymond Allen, pro se, appeals the April 21, 2017, order of the Circuit Court of Fayette County denying his petition for writ of habeas corpus. Respondent John T. Murphy, Warden, Huttonsville Correctional Center, by counsel Gordon L. Mowen, II, filed a summary response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2000, a Fayette County grand jury indicted petitioner on 122 counts of third-degree sexual assault. J.B. Rees, then Chief Public Defender, was appointed to represent petitioner. Subsequently, petitioner entered into a plea agreement, whereby he agreed to plead guilty to twelve counts of third-degree sexual assault. In exchange, the State agreed to dismiss the remaining 110 counts against petitioner in Fayette County and to dismiss similar charges against petitioner in Webster County involving the same victims. Petitioner entered his guilty pleas at a July 25, 2000, hearing. However, on October 24, 2000, petitioner filed a pro se motion to withdraw his guilty pleas. Also, Mr. Rees filed a motion requesting that he be allowed to withdraw as petitioner's attorney. The circuit court granted Mr. Rees' motion to withdraw and appointed Anthony Salvatore to represent petitioner.

According to Mr. Salvatore, he reviewed petitioner's file immediately following his receipt of the same and requested a transcript of the July 25, 2000, plea hearing. Mr. Salvatore first met with petitioner on November 1, 2000, and the two had a "fairly lengthy" discussion regarding the pro se motion to withdraw petitioner's guilty pleas. Petitioner and Mr. Salvatore "discussed the underlying facts of the case, the nature of the charges against him, and his concerns concerning the

1

plea[s] which he had entered, and his concerns with the effectiveness of his prior counsel." As a result of this discussion, petitioner informed Mr. Salvatore that he no longer wanted to withdraw his guilty pleas. However, Mr. Salvatore advised petitioner that he had not yet received the plea hearing transcript and that he "wanted to make sure that [the circuit court] adequately complied with Rule 11 of the West Virginia Rules of [Criminal] Procedure" and adequately safeguarded his "West Virginia constitutional and United States constitutional rights." Mr. Salvatore received the plea hearing transcript, reviewed it, and advised petitioner that his guilty pleas were "in all respects proper" and that "it was in [petitioner's] best interest to ask [the circuit court] to ignore or withdraw" the pro se motion to withdraw his pleas. Petitioner agreed with that advice and Mr. Salvatore filed a notice to withdraw the motion to withdraw petitioner's guilty pleas on November 13, 2000.

At a November 15, 2000, hearing, the circuit court placed petitioner under oath to confirm Mr. Salvatore's representations regarding the withdraw of the motion to withdraw his guilty pleas:

> Q. Have you heard everything your lawyer has just said to me here today?
>
> A. Yes, sir.
>
> Q. And[,] has he correctly reported to me his meeting with you?
>
> A. Yes, sir.
>
> Q. Has he correctly reported to me what you have directed him to tell me?
>
> A. Yes, sir.
>
> Q. Are you fully and completely satisfied with this lawyer?
>
> A. Yes, sir.
>
> ****
>
> Q. . . . Your lawyer says and I know it to be so, because I can see from here his copy, and I have the original where he got a full and complete transcript of the entry of your guilty pleas on July 25, 2000. And[,] did he talk to you about that?
>
> A. Yes, sir.
>
> ****
>
> Q. Are you satisfied, that after you have talked with this new lawyer and had him to examine—he says he has examined the entire file that Mr. Rees had, and after he has done all that and after he had gone through this long transcript of the guilty

pleas—the transcript itself is eighty-eight pages long—have you decided that you wish to withdraw your motion to have these pleas set aside?

A. Yes, sir.

****

Q. Do you believe your lawyer, Mr. Salvatore, is forcing you to withdraw that motion?

A. No, sir.

Q. Is it your own idea[ ], after consulting with your new lawyer, to withdraw that motion?

A. Yes, sir.

Q. . . . After consulting with your new lawyer, do you believe that this—these pleas are in your best interest overall?

A. Yes, sir.

****

Q. So[,] tell me, do you want me to go ahead and hear the motion to withdraw the guilty pleas, or do you want to withdraw that motion and leave the guilty pleas stand?

A. Leave them stand.

Q. Is that what you want to do?

A. Yes, sir.

Q. Do you have any questions about those—about that motion or your guilty pleas?

A. No, sir.

Finally, the circuit court noted that petitioner was previously informed of the sentencing range for third-degree sexual assault and reiterated that, if the court imposed consecutive sentences with regard to all the counts to which petitioner pled, his aggregate sentence would be twelve to sixty years of incarceration. Petitioner responded, "Yes, sir." Accordingly, the circuit court concluded that petitioner reached "an informed and voluntary decision" to withdraw the pro se motion to withdraw his guilty pleas and upheld his pleas.

At a December 11, 2000, hearing, the circuit court imposed upon petitioner a sentence of one to five years of incarceration for each of his twelve convictions for third-degree sexual assault. The circuit court ordered that ten of those sentences be served consecutively and that the remaining two sentences be served concurrently, for an aggregate sentence of ten to fifty years of incarceration. Subsequently, petitioner filed five petitions for writ of habeas corpus, all of which were either dismissed or denied by the circuit court. In 2013, petitioner was released on parole. However, later that same year, petitioner violated his parole by failing to report to his parole officer. Petitioner's parole was revoked, and he was remanded to prison to serve the remainder of his sentence. Since 2013, the West Virginia Parole Board ("parole board") has interviewed petitioner annually and has denied parole each time.

On September 28, 2016, petitioner filed the instant habeas petition alleging that the parole board's decisions since 2013 to deny him parole were arbitrary and/or violated his right to due process of law and that he was not provided effective assistance of counsel with regard to the entry of his guilty pleas. On January 20, 2017, petitioner filed an amendment to his petition which alleged that double jeopardy principles were violated as he initially faced the exact same charges in Braxton County and that, after those charges were dismissed, they were improperly reinstituted in Fayette County.[1] By order entered April 21, 2017, the circuit court denied habeas relief. First, the circuit court found that petitioner's claim that the parole board denied parole "three times" constituted an insufficient basis on which to find that the board acted arbitrarily or violated due process. Second, the circuit court found that, at the November 15, 2000, hearing, petitioner, "in open court, on the record, clearly stated that he was satisfied with his new[ly-]appointed counsel, Mr. Salvatore" and that petitioner made "a knowing, voluntary[,] and informed decision to withdraw" his pro se motion to withdraw his previously accepted guilty pleas. Finally, given petitioner's concession that the Braxton County charges were dismissed prior to the institution of the Fayette County charges, the circuit court found that jeopardy never attached to the former charges and no double jeopardy violation occurred.

Petitioner now appeals the circuit court's April 21, 2017, order denying the instant habeas petition. We apply the following standard of review in habeas appeals:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

---

[1]Though similar charges against petitioner in Webster County were dismissed pursuant to the plea agreement in this case, the record does not substantiate petitioner's claim that he faced the exact same charges in Braxton County. However, because both the circuit court and respondent assumed arguendo that petitioner may have faced the exact same charges in Braxton County, this Court makes the same assumption.

Syl. Pt. 1, of *Anstey v. Ballard*, 237 W.Va. 411, 787 S.E.2d 864 (2016). In syllabus point 3 of *Anstey*, we held as follows:

> "'A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief. Syllabus Point 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973).' Syl. Pt. 2, *White v. Haines*, 215 W.Va. 698, 601 S.E.2d 18 (2004)."

237 W.Va. at 412, 787 S.E.2d at 866.

On appeal, petitioner argues that the circuit court erred in denying the instant habeas petition without a hearing and appointment of counsel. Respondent counters that the circuit court properly denied the petition as the alleged grounds for relief were without merit. We agree with respondent.

With regard to the parole board's decisions since 2013 to deny petitioner parole, we review those decisions only for an abuse of discretion. *See* Syl. Pt. 3, *Rowe v. Whyte*, 167 W.Va. 668, 280 S.E.2d 301 (1981); *Tasker v. Mohn*, 165 W.Va. 55, 67, 267 S.E.2d 183, 190 (1980). Though petitioner is obviously dissatisfied with his continued incarceration, we find that there is no evidence that the parole board abused its discretion in its yearly evaluations of petitioner's suitability for parole "based on [his] record *and its expertise*." *Rowe*, 167 W.Va. at 678, 280 S.E.2d at 307 (quoting *Tasker*, 165 W.Va. at 67, 267 S.E.2d at 190) (Emphasis added.).

In syllabus point 3, in part, of *Tasker*, we held that "the procedures by which [parole] is granted or denied must satisfy due process standards." 165 W.Va. at 55, 267 S.E.2d at 184. Petitioner claims that, during his 2016 parole interview, the parole board did not allow his sister to speak on his behalf. However, in an undated letter to the parole board, petitioner acknowledges that the board allowed two other family members and his girlfriend to speak at that hearing. Moreover, in *Tasker*, we found that there is "no constitutional requirement" that an inmate be allowed to present witnesses at his parole interview. *Id.* at 66, 267 S.E.2d at 190. Therefore, we find that petitioner's claim regarding his 2016 parole interview does not implicate due process concerns.

With regard to petitioner's claim of ineffective assistance of counsel, in *State ex rel. Watson v. Hill*, 200 W.Va. 201, 204, 488 S.E.2d 476, 479 (1997), we found that such a claim often must be litigated in a collateral proceeding. *See also Losh v. McKenzie*, 166 W.Va. 762, 767, 277 S.E.2d 606, 610 (1981) (same). However, in the instant case, we find that the record was sufficiently developed so as to allow the circuit court to adjudicate the claim without a hearing and without appointment of counsel.

We set forth the applicable standards for reviewing claims of ineffective assistance in syllabus points 3 and 6 of *State ex rel. Vernatter v. Warden, West Virginia. Penitentiary*, 207 W.Va. 11, 528 S.E.2d 207 (1999):

5

3. "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syllabus point 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

****

6. In cases involving a criminal conviction based upon a guilty plea, the prejudice requirement of the two-part test established by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), demands that a habeas petitioner show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

We find that any ineffective assistance claim against Mr. Rees was resolved when the circuit court granted his motion to withdraw and appointed new counsel to review the entry of petitioner's guilty pleas.

At the November 15, 2000, hearing, petitioner's new attorney, Mr. Salvatore, reported to the circuit court that he (1) reviewed petitioner's case file immediately upon his receipt of it; (2) requested the transcript of the July 25, 2000, plea hearing; (3) had a "fairly lengthy" meeting with petitioner on November 1, 2000, at which petitioner made the preliminary decision to withdraw his pro se motion to withdraw his guilty pleas; (4) advised petitioner that he wanted to review the plea hearing transcript to ensure that the entry of the guilty pleas complied with Rule 11 and applicable constitutional requirements;[2] (5) reviewed the plea hearing transcript upon his receipt of it; (6) advised that petitioner's guilty pleas were "in all respects proper" and that "it was in [petitioner's] best interest to ask [the circuit court] to ignore or withdraw" the pro se motion to withdraw his pleas; and (7) filed a notice to withdraw the motion to withdraw petitioner's guilty pleas given petitioner's agreement that it was in his best interest not to have his pleas set aside. Following Mr. Salvatore's report, not only did petitioner confirm Mr. Salvatore's representations under oath, but he also affirmed that he was "fully and completely satisfied" with his new attorney and that the withdrawal of the motion to withdraw his guilty pleas was his own idea because the pleas were in his best interest. We find that the record clearly demonstrates that the guilty pleas substantially benefitted petitioner because, in exchange for those pleas, the State agreed to dismiss 110 of 122 counts of third-degree sexual assault. Therefore, we conclude that, even if there was some

---

[2]Rule 11 of the West Virginia Rules of Criminal Procedure governs the entry of pleas.

deficiency in the performance of either Mr. Salvatore or Mr. Rees, petitioner cannot show that he would have not pled guilty and insisted on going to trial.[3]

With regard to petitioner's double jeopardy claim, we concur with both the circuit court and respondent that the claim fails as a matter of law. In syllabus point 2, in part, of *State v. Coles*, 234 W.Va. 132, 763 S.E.2d 843 (2014), we held that "[i]f a guilty plea is shown to have been intelligently and voluntarily entered into, generally it cannot be directly or collaterally attacked on double jeopardy grounds." In this case, though petitioner filed a pro se motion to withdraw his guilty pleas, the circuit court found at the November 15, 2000, hearing that petitioner made "an informed and voluntary decision" to withdraw that motion and continue with those pleas.[4] Moreover, assuming arguendo that petitioner faced the exact same charges in another county, he concedes that those charges were dismissed prior to the institution of the Fayette County charges. Therefore, jeopardy never attached to the former charges and no double jeopardy violation occurred. *See* Syl. Pt. 4, *State ex rel. Blaney v. Reed*, 215 W.Va. 220, 599 S.E.2d 643 (2004) (holding that jeopardy attaches when a jury is sworn). Accordingly, we conclude that the circuit court did not abuse its discretion in denying petitioner's instant habeas petition without a hearing or appointment of counsel.

For the foregoing reasons, we affirm the circuit court's April 21, 2017, order denying petitioner's instant petition for writ of habeas corpus.

Affirmed.

**ISSUED**: March 23, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

---

[3] Petitioner contends that witnesses could have been called to prove his innocence. However, petitioner gave up his right to present such witnesses by pleading guilty. Moreover, petitioner fails to identify who these witnesses were or explain how their testimony would have established his innocence.

[4] Petitioner contends that he was never informed that he could have received a maximum sentence of twelve to sixty years of incarceration given his guilty pleas. However, we find that the record belies this assertion. At the November 15, 2000, hearing, the circuit court noted that petitioner was previously informed of the sentencing range for third-degree sexual assault and reiterated that, if it imposed consecutive sentences with regard to all the counts to which he pled guilty, his aggregate sentence would be twelve to sixty years of incarceration. Also, the circuit court ultimately chose a combination of consecutive and concurrent sentences and imposed an aggregate term of ten to fifty years of incarceration.